**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Khalil Billups and
Adam R. Hageman,

     Plaintiffs,

v.

Lt. Jay Rykken, Lt. Todd Engeldinger,
Lt. Brant Baird, Sgt. Gwen Brausen,
Officer Ross Fleck, Officer Ben Hudek,
Officer Matthew Kotaska,
Officer Tyler Haugen,
Officer Christopher Fadling,
Officer Zachariah Frank,
Officer Jason Elmore,
Officer Sean Anderson,
Officer Grace Zencius,
Officer Shawnee Mielke,
Warden Eddie Miles, and
AWO Carol Krippner,

     Defendants.

Case No. 19-cv-2581 (NEB/DTS)

**REPORT AND RECOMMENDATION**

---

     Plaintiffs Khalil Billups and Adam Hageman bring various civil rights and conspiracy claims under 42 U.S.C. § 1983 against 16 employees of the Minnesota Department of Corrections (DOC) in their individual capacities arising out of events at the Minnesota Correctional Facility at St. Cloud (MCF-St. Cloud). They seek $14.8 million in damages. Am. Compl. & Supp., Dkt. Nos. 27, 28. Defendants move to dismiss the claims for failure to adequately plead and state a claim under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure and failure to allege each Defendant's direct personal involvement in the alleged constitutional violations. Defendants also argue they are

entitled to qualified immunity. Dkt. No. 52. For the reasons discussed below, the Court recommends that Defendants' motion to dismiss be granted.

## FINDINGS OF FACT

### I.      Procedural Background

In their original Complaint Plaintiffs Hageman and Billups alleged several violations of their rights under the U.S. Constitution and various federal criminal statutes. Dkt. No. 1. Their claims primarily relate to Hageman's transfer to the segregation unit on September 16, 2019 during which his right thumb and index finger were cut and his wrist was broken and where he was left without his Bible until September 18, 2019 when he was returned to his cell in the general population. Hageman alleged the injuries were deliberately inflicted by five officers who lifted him up by the handcuff chain. Billups had been placed in the segregation unit on an earlier date and alleged he was without his Bible for four or five days. On September 24, 2021 they sued the DOC and individual defendants in their official capacities seeking $14.8 million in damages.

Upon initial screening of the lawsuit under 28 U.S.C. § 1915(e)(2)(B) the Court recommended dismissal of the Complaint in its entirety because the claims against the DOC and the official capacity claims were barred by 11th Amendment sovereign immunity; the Complaint did not allege any individual capacity claims or claims for injunctive relief; and there was no private right of action for violation of the criminal statutes cited by Plaintiffs. *See* Report & Recommendation (R&R) (Apr. 15, 2020), Dkt. No. 14. In response to the R&R, Plaintiffs sought and obtained leave to amend their Complaint to drop their claims based on criminal statutes and to clarify their intent to assert both individual and official capacity claims. Dkt. Nos. 18, 22.

The Amended Complaint and Supplement [Dkt. Nos. 27, 28], which together form the operative pleading in this lawsuit,[1] essentially copied the original Complaint but added two defendants (Warden Eddie Miles and AWO Carol Krippner); stated that they are asserting individual capacity claims; and removed references to violations of criminal statutes, leaving only civil rights claims pursuant to § 1983. *See* R&R (Feb. 18, 2021) at 5 , Dkt. No. 40. Plaintiffs attached numerous exhibits to their Amended Complaint and Supplement. Dkt. Nos. 20, 25-26, 38, 38-1.[2]

The Amended Complaint was screened under § 1915(e)(2)(B), after which the Court dismissed DOC and the official capacity claims against the individual defendants based on sovereign immunity. The Court also dismissed defendant J. Lehner from the lawsuit because the Amended Complaint and Supplement did not contain any factual allegations concerning this person. R&R, Dkt. No. 40; Order, Dkt. No. 51. What remains are the § 1983 claims against the 16 Defendants in their individual capacities.

---

[1] *See* Feb. 18, 2021 R&R at 5 n.2, Dkt. No. 40.
[2] Plaintiffs' original Complaint also attached 24 pages of exhibits. Dkt. Nos. 1-1, 1-7.

## II.    Facts

This lawsuit arises out of events that occurred while Hageman and Billups were incarcerated[3] at MCF-St. Cloud. Am. Compl. at  1.[4] Hageman arrived at the prison with two Bibles, and he requested and received a large print Bible from the prison chaplain. Am. Compl. at 1. He gave one of his Bibles to Billups. *Id.* at 2.

On August 10, 2019 Billups was transferred from Health Services to the segregation unit. *Id.* He requested the Bible on September 10. *Id.* at 3. At some point a Bible was delivered to him. *Id.* at 7.

Hageman alleges he was placed in administrative segregation for his own protection from other offenders on September 16, 2019. *Id.* at 3. He contends corrections officers forcibly removed him from his bunk in cell 710 while he was studying his Bible. *Id.* He made several requests to keep his Bible with him, as well as "sensitive legal mail containing appellate documents." *Id.* at 4. While transferring him to the segregation unit, he alleges five officers "assaulted him by lifting [him] by the handcuffs chain inflicting demonstrable bodily harm in the process of moving/escorting" him." *Id.* His right thumb and index finger were cut and his wrist was broken. *Id.* at 5. He claims the officers used

---

[3] Defendants' memorandum says that Hageman was convicted in October 2019, which post-dates the September 16, 2019 incident involved in this lawsuit. Def. Mem. 3, Dkt. No. 53. That would suggest he was a pretrial detainee, not an inmate, at the time of the events involved in this lawsuit. The Court also notes that one of the legal standards Plaintiffs cite in the Supplement to the Amended Complaint is a standard applicable to pretrial detainees. *See* Supp. at 1, Dkt. No. 28. But Hageman's Offender Intake form at MCF-St. Cloud (attached to the original Complaint) is dated August 29, 2019 [Dkt. No.1-1 at 1], which is the date the Amended Complaint says Hageman was incarcerated at MCF-St. Cloud. In addition, the appellate decision denying Hageman's appeal of his conviction states that he was sentenced in August 2019. *State v. Hageman,* No. A19-1893, 2020 WL 6554843, at *1 (Minn. Ct. App. Nov. 9, 2020). Thus, he was an inmate, not a pretrial detainee, at all times relevant to this case.

[4] Citations to page numbers refer to the handwritten numbers at the bottom of the page in Dkt. No. 27.

"unreasonable" and "excessive force" and that it was "an act of retaliation and religious discrimination." *Id.* at 4-5; Supp. at 1-2. He also contends that other officers failed to protect him. *Id.* at 2.

Hageman alleges he was strip searched in segregation cell 406 in front of several male and one female officer. Am. Compl. at 4. He continued to ask for his Bibles and asked that his legal mail be placed in the mail room. *Id.* at 5. He was then relocated to segregation cell 413. *Id.* at 5. A short time later a nurse arrived at his cell, and Hageman told her about his fractured wrist and cut right thumb. *Id.* He asked the nurse and, later, other staff to take photographs of his wrist, but no one did. *Id.* at 5, 6, 12. That same day the nurse gave him pain medication and a splint cast. *Id.* at 6.

When Hageman arrived at cell 413 "there was an unknown offender's blood all over the wall, floor and in the sink" and toilet *Id.*; Supp. at 1. Hageman reported these conditions to a doctor who visited his cell on September 17, 2019. Am. Compl. at 6. Hageman was later escorted to Health Services where his wrist and fingers were examined by a doctor and a nurse. *Id.* at 8. The doctor ordered x-rays. *Id.*

On September 18, 2019 Hageman was moved back to his cell 710 in Unit E in the general population. *Id.* at 9. His cellmate Billups was there. *Id.* Hageman told Billups he had filled out several property pick-up forms requesting his Bible in the segregation unit, but never received it. *Id.* at 9-10. Billups told Hageman he too was without a Bible for at least four or five days in the segregation unit. *Id.* at 10.

Hageman made several requests to see a doctor again because his pain medication upset his stomach and was not effective in managing the pain in his wrist. *Id.* at 12. A nurse told him that a doctor would follow up with him, but no doctor or nurse

followed up or addressed his concerns after September 18, 2019. *Id.* Hageman alleges he was denied care from September 16 to October 7, 2019. Supp. at 2. No doctor, nurse, or prison staff ever took photos of his injuries, despite his many requests that they do so. Am. Compl. at 12.

On September 18, 2019 Hageman and Billups requested federal civil lawsuit packets from MCF-St. Cloud staff. *Id.* at 11. They allege Baird, Krippner and Engeldinger denied Billups access to unspecified legal documents. Supp. at 2. They contend that when Billups asked for a civil lawsuit cover sheet, Baird responded that he did not know what item Billups was asking for. *Id.*[5] They allege Brausen refused to notarize their signatures on the lawsuit and on Billups's application to proceed in federal court without prepaying fees and costs (IFP application). Am. Compl. at 17; Supp. at 1. They allege "[d]enial of access to Courts by interfering with access to lawyers, law library, law enforcement, legal documents and notary by Gwen Brausen," "by confiscating legal materials," and by "blocked calls to law enforcement and lawyers." Supp. at 1.

Plaintiffs' original Complaint shows Brausen notarized each of their signatures on September 23, 2019. Dkt. No. 1 at 25, 26. She also notarized Billups's signature on the IFP application on September 23, 2019. Dkt. No. 3 at 3. This lawsuit was received and filed in federal court on September 24, 2019. Dkt. No. 1 at 1.

Hageman was transferred to MCF-Stillwater "and no explanation, Due Process or report was ever given to [him] regarding the incident." Supp. at 2.

---

[5] The Supplement incorrectly states that Baird responded on September 16, 2019. Exhibit B3 is a kite showing that Hageman made the request on September 18 and Baird responded on September 23. Dkt. No. 20 at 3.

Hageman contends "[n]o action was taken" in response to his written grievance (Exs. A1 and A2) to Warden Eddie Miles and the DOC Inspection and Enforcement Unit that officers used excessive force and broke his wrist and that he was without his Bible from September 16-18, 2019. Supp. at 2.

## III.   Plaintiffs' Causes of Action

The Amended Complaint and Supplement do not set forth specific causes of action in any organized manner. For example, there is no Count One, Count Two, etc., identifying which provision of the Constitution was allegedly violated by whom, and which factual allegations support which particular constitutional claims against each of the 16 Defendants. Rather, Plaintiffs set forth narrative summaries and commentary.

The Amended Complaint asserts that Defendants "agreed and conspired against the Plaintiffs"; violated their "right to be free from discriminatory official treatment"; violated Plaintiffs' rights under the First Amendment to be free of "religious discrimination"; violated Hageman's "substantive due process rights"; and engaged in "retaliation over" Hageman and Billups's "constitutional right to their Bibles." Am. Compl. at 14-16. It also alleges Brausen interfered with Plaintiffs' filing of this lawsuit by "refus[ing] to notarize [the] complaint relief form" and Billups's application to proceed in federal court without prepaying fees. *Id.* at 17.

The Supplement is a two-page document that purports to "specify the . . . actions by all named Defendants that give rise to liability." Dkt. No. 28. It identifies causes of action for conspiracy, retaliation, procedural and substantive due process violations, interference with access to the courts, violation of Plaintiffs' right to exercise their religion,

7

excessive force that amounts to cruel and unusual punishment, failure to protect, and medical malpractice.

Plaintiffs seek $14.8 million in damages for "lost/reduced future earning capacity, and future health care expenses, future pain, future disability, past emotional distress, future emotional distress and any and all future or past damages." Am. Compl. Request for Relief.

## CONCLUSIONS OF LAW

### I.      Standard of Review

Defendants move to dismiss Plaintiffs' claims for failure to adequately plead them under Rule 8 and failure to state a claim under Rule 12(b)(6). Dkt. No. 52. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to articulate a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Although a *pro se* complaint is liberally construed, it must still contain specific facts sufficient to support its legal conclusions. *Kaylor v. Fields*, 661 F.2d 1177, 1183 (8th Cir. 1981). Thus, while a court accords deference to *pro se* pleadings, it will not supply facts that are not alleged that might support the plaintiff's claim. *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). In determining whether a plaintiff has stated a plausible claim, the Court considers only the materials that are necessarily embraced by the pleadings and exhibits attached to the

complaint. *Cox v. Mortgage Elect. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012); *see also Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading).

## II.     Free Exercise of Religion and Retaliation

### 1.     Free Exercise

Hageman alleges his right to exercise his religion was violated because he was reading his Bible when he was taken from his cell 710 and moved to the segregation unit, he was not allowed to take his Bible with him, and he was without his Bible while in the segregation cell from September 16-18, 2019. Billups alleges his right to exercise his religion was violated because he was without his Bible for four or five days while in a segregation cell. The Court finds their allegations do not state a claim that their First Amendment rights were violated.

The Free Exercise Clause of the First Amendment prohibits the government from enacting laws, promulgating regulations, or adopting policies that compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma. *Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1052 (8th Cir. 2020). When a prison regulation or policy impinges on an inmate's sincerely held religious beliefs, the regulation is valid if it is reasonably related to legitimate penological interests. *Id.* at 1053 (citing *Turner v. Safley,* 482 U.S. 78, 89 (1987)).

To warrant a *Turner* analysis of penological interests, an inmate must show the challenged regulation "substantially burdens" his sincerely held belief. *Id.* The prison regulation:

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Id.* (quotations and citations omitted).

Here, Plaintiffs have not identified or challenged any prison regulation or policy at MCF-St. Cloud that violates the Free Exercise Clause. The "Free Exercise Clause is directed at legislative action," not at prison officials implementing the regulation or policy. *Id.* at 1054. Thus, Plaintiffs have failed to state an actionable § 1983 claim. *See id.* at 1055 ("we conclude that, absent evidence that an underlying prison regulation or policy violates the Free Exercise Clause, evidence that a correction official negligently failed to comply with an inmate's sincerely held religious . . . beliefs does not establish a Free Exercise Clause claim under § 1983"). Furthermore, if they had a claim that reached the next step of being analyzed under the "substantial burden" test, it is doubtful the test would be satisfied in the circumstances here, in which they were without their Bibles for two to three days (Hageman) or four to five days (Billups). Accordingly, the Court recommends that their free exercise claims be dismissed.

### 2.    Retaliation

The state a claim that prison officials retaliated against Billups or Hageman for exercising their First Amendment rights, they must allege facts sufficient to show that (1) they engaged in a protected activity, (2) officials took adverse action against them that

would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Waters v. Madson,* 921 F.3d 725, 741 (8th Cir. 2019).

It appears the protected activity at issue is reading their Bibles. The specific adverse action against each Plaintiff is less clear, but appears to encompass any action that resulted in them being unable to read their Bibles, including being in a segregation cell where their Bibles were not available to them right away. In that respect, their allegations overlap with their free exercise claim. Plaintiffs do not plead any facts to support a reasonable inference that either one was placed in the segregation unit in retaliation for exercising their religion. Though Hageman alleges he was reading his Bible at the time he was taken away to the segregation cell and was not allowed to bring it with him, Am. Compl. at 3-4, there are no facts to suggest his transfer there was "an act of retaliation and religious discrimination," *id.* at 4. Rather, the Amended Complaint says he was placed there for his own protection from other offenders. *Id.* at 3.

As for Billups, the Amended Complaint does not allege any individual retaliated against him, only that he was "religiously discriminated against" because he was without his Bible for four or five days. *Id.* at 10, 11. Although the Summary section of their Amended Complaint labels being without their Bibles as "retaliation," Plaintiffs in essence are just re-asserting in conclusory fashion their free exercise claim: "The simultaneous retaliation over Mr. Hageman and Mr. Billups wishes and constitutional right to their Bibles resulted in many negative damages both past and future to the Plaintiffs." *Id.* at 17. Plaintiffs fail to allege who was responsible for any adverse action or how any Defendant was personally involved in any alleged retaliatory conduct. There are no facts from which

11

to infer a retaliatory motive on the part of any Defendant. Thus, they have failed to plead a plausible claim for retaliation based on religious exercise.

Finally, the Supplement alleges "[r]etaliation for Civil Rights lawsuit and interference with First Amendment Right of Free Speech." Supp. at 1. The Supplement was filed on June 19, 2020 along with the Amended Complaint. The original Complaint was filed on September 24, 2019. To the extent that Plaintiffs are claiming that someone retaliated against them for filing this lawsuit during the intervening nine months, they failed to allege facts describing such retaliation in either the Amended Complaint or the Supplement. The only reference to such retaliation is this single phrase in the Supplement. This is obviously deficient on its face to state any sort of claim, and the Court does not address it further.

## III.    Excessive Force and Failure to Protect

### 1.    Legal Standards

The Eighth Amendment's ban on cruel and unusual punishment applies to excessive force claims brought by convicted criminals serving their sentences. *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) (citing *Whitley v. Albers*, 475 U.S. 312, 318-22 (1986)). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The Eighth Circuit has explained that

> [t]his inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be drawn as to whether

> the use of force could plausibly have been thought necessary,
> or instead evinced such wantonness with respect to the
> unjustified infliction of harm as is tantamount to a knowing
> willingness that it occur."

*Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (quoting *Whitley*, 475 U.S. at 321).

"An officer may be held liable only for his or her own use of excessive force." *Id.* at 974.

"[T]he subjective motivations of the individual officers are of central importance in deciding

whether force [was] used maliciously and sadistically to cause harm in violation of the

Eighth Amendment." *Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014) (quoting

*Graham v. Connor,* 490 U.S. 386, 397-98 (1989)).

To establish an Eighth Amendment failure-to-protect claim, Hageman must show

two things: (1) that Defendants knew there existed an objective, substantial risk of serious

harm to him in being handcuffed and moved to the segregation unit by the officers, and

(2) that Defendants were deliberately indifferent to that risk. *See Blair v. Bowersox,* 929

F.3d 981, 987 (8th Cir. 2019). The deliberate indifference element is subjective and has

two components. First, Defendants must have known of the substantial risk to Hageman.

Hageman need not show they had actual knowledge of the risk of harm to him; instead,

he may demonstrate that the risk was obvious enough to support an inference that they

knew the risk existed. *Id.* However, "constructive knowledge," or the "should-have-known"

standard, is not sufficient to support a finding of deliberate indifference. *Id.* Rather,

Hageman must show that Defendants had been exposed to information concerning the

risk and thus "must have known" about it. *Id.*

Second, Hageman must demonstrate that Defendants deliberately disregarded

that risk by showing they knew their conduct was inappropriate in light of the risk. *Id.* The

standard is akin to criminal recklessness: a prison official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference before acting — or failing to act — with a conscious disregard for the risk. *Id.* at 988. The prison official's state of mind is measured according to his knowledge at the time of the incident, without the benefit of hindsight. *Id.*

### 2.  Analysis

Hageman alleges that prison officers used excessive force by "lifting by the handcuffs chain inflicting demonstrable bodily harm in the process of moving/escorting" him to the segregation unit." Am. Compl. at 4. As a result he suffered a broken wrist and a cut to his right thumb and index finger. He also alleges several officers failed to protect him from the use of excessive force. Supp. at 2. Defendants assert the claims should be dismissed because the Amended Complaint and Supplement fail to satisfy Rule 8 pleading requirements, the allegations are insufficient to state § 1983 claims because they are not clear as to what each individual Defendant did (or failed to do) during the incident, and that "[i]t strains credulity that all five of the named defendants lifted Hageman up by the handcuff chain and broke his wrist." Reply at 3-4, Dkt. No. 62.

First, as to the assertion that it "strains credulity" that five officers would be involved in lifting Hageman by the handcuff chain to deliberately injure him, that argument is not a basis to find the claim deficient here. Whether Hageman's testimony or evidence turns out to be credible is not at issue at the pleading stage.

However, while Hageman has described the incident of force he alleges was used against him, the operative pleading in this case — the Amended Complaint and Supplement — is not only unclear but also contradictory as to who acted and who failed to act. The Amended Complaint says five officers lifted him by the handcuff chain but

does not name them. Am. Compl. at 4. The Supplement names eight officers who allegedly lifted him by the handcuffs: "battery by Lt. Engeldinger, Officer Fleck, Matthew Kotaska, Tyler Haugen, Christopher Fadling, Zachariah Frank, Officer J. Elmore and Officer S. Mielke on September 16, 2019. Plaintiff's right wrist was severely fractured as a result." Supp. at 1. This contradictory information is repeated in Plaintiffs' opposition memorandum. *Compare* Pl. Mem. at 4 ("Five officers including Defendants Todd Engeldinger, Ross Fleck, Matthew Kotaska, Tyler Haugen, and Shawnee Mielke broke Hageman's wrist . . . as a result of excessive force when the named officers lifted the Plaintiff by the handcuff chain.") *with* page 8 ("The Defendants are correct when they re-pen and ascribe that Lt. Engeldinger, Officer Fleck, Kotaska, Haugen, Fadling, Frank, Elmore and Shawnee Mielke were all involved in 'lifting [Hageman] by the handcuff chain' and breaking the Plaintiff's wrist."), Dkt. No. 57.

On top of that, while alleging that Engeldinger was one of five and/or one of eight officers who *used* excessive force, Hageman at the same time alleges that Engeldinger is one of four officers who *failed* to act to prevent the use of excessive force. The Supplement alleges: "Lt. Engeldinger, Lt. Baird, Lt. J. Rykken and Sgt. J. Elmore all had a subjectively culpable state of mind and all failed to protect him. Hageman suffered a serious deprivation as a result of their failure to act. The excessive force used by the correctional officers caused the Plaintiff serious mental, physical, and emotional injury." Supp. at 2. Hageman cannot plausibly allege that his broken wrist was caused both by Engeldinger's deliberate acts and by his failure to act.

But even setting aside any alleged involvement by Engeldinger in the failure-to-protect claim, there are no factual allegations to support an inference that Baird, Rykken,

or Elmore (1) had any information from which they must have known there was a substantial risk that the five (or eight) individual officers would deliberately lift Hageman by the handcuff chain as alleged, causing his broken wrist, during his transfer to the segregation unit, and (2) consciously disregarded that risk. For example, the Amended Complaint lacks any information to suggest Baird, Rykken, and Elmore had any reason to know of any substantial risk of harm. It lacks any information about where they were; what they saw or heard; what they knew about Hageman's transfer to the segregation cell on September 16, 2019; or what role they played in it. Hageman offers nothing more than a conclusory allegation that they failed to protect him from the use of excessive force. He has failed to plead either an objective risk to himself or subjective deliberate indifference to such risk by any Defendant.

It is obvious that Hageman's pleading with respect to the excessive force and failure-to-protect claims is insufficient on its face. In permitting Plaintiffs to amend their original Complaint to assert individual capacity claims, the Court specifically directed them to clearly describe each individual Defendant's action:

> In the amended complaint, plaintiffs should make clear that they are suing the defendants in their personal capacities, and **they should specify the actions by each defendant that give rise to liability**.

Order at 4 (emphasis supplied), Dkt. No. 22. They did not do so. In fact, as noted above, Hageman did the opposite by injecting confusing and contradictory allegations, information, and identifications. The Court finds he has not adequately and plausibly pleaded factual allegations to support his excessive force and failure-to-protect claims and recommends these claims be dismissed.

**IV.    Medical Care and Malpractice Claim**

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide inmates with medical care. *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997). To prevail on a claim of constitutionally inadequate medical care, the inmate must show that the prison officials' conduct amounted to deliberate indifference to the inmate's serious medical needs. *Id.* Grossly incompetent or inadequate care can constitute deliberate indifference in violation of the Eighth Amendment where the treatment is so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care. *Id.* at 1240-41.

Hageman alleges he was denied care and/or received inadequate medical care for his broken wrist that amounted to medical malpractice. Supp. at 2 ("Medical malpractice was clearly an issue when Plaintiff Hageman was denied care from September 16, 2019 to October 7, 2019."). But allegations of medical malpractice or merely negligent medical care are insufficient to state an actionable § 1983 claim. *Dulany,* 132 F.3d at 1239.

Neither the Amended Complaint nor the Supplement claims "deliberate indifference," only medical malpractice. Moreover, Hageman's factual allegations in his pleading, along with the attached exhibits, do not support a reasonable inference that any official was deliberately indifferent to his serious medical needs. Rather, they show he received medical attention beginning on the day his wrist was broken, and that medical treatment for his wrist and the accompanying pain was ongoing. He was examined by a physician and nurses and received pain medication, a splint, and x-rays. The pleading and exhibits show he was dissatisfied with the pain management, with the delay in taking

17

x-rays that were ordered, and the failure of nurses and other staff to take photos of his injuries. But none of his allegations demonstrate "grossly incompetent or inadequate care" or treatment "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Accordingly, Hageman has failed to state a claim for any constitutional violation arising out of his medical care, and such claims should be dismissed.

## V.   Conditions in Segregation Cell 413

Hageman alleges that when he arrived at cell 413 (after initially being taken to cell 406) there was another person's blood on the wall, floor, sink, and toilet. He contends these conditions amounted to unconstitutional punishment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. The Supreme Court has held that the Eighth Amendment requires prison officials to take reasonable measures to guarantee inmates' health and safety. *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994). To establish a violation based on the conditions in cell 413, Hageman must show that (1) his incarceration in cell 413 posed a substantial risk of serious harm, and (2) prison officials were deliberately indifferent to it, *i.e.,* knew of but disregarded an excessive risk to his health or safety. *Id.* at 834, 837.

Hageman does not provide further details about the blood on the surfaces he identified in cell 413. For example, he does not state the amount of blood or how long it remained there, *i.e.,* when it was cleaned up or whether it was there the entire time from September 16-18, 2019. He does not allege that he was exposed to disease or suffered any consequence from the presence of the blood. Nonetheless, it is well understood that proximity to someone else's blood risks exposure to disease, and courts recognize that

18

sanitation is a "core area" of the Eighth Amendment. *See Fruit v. Norris*, 905 F.2d 1147, 1150-51 (8th Cir. 1990) (allegation that inmates were forced to work in a flow of raw sewage without protective clothing or equipment was sufficient to survive dismissal of claim). The Court does not minimize the fact that any such exposure is highly undesirable and carries risk. But here, even assuming the blood was present during Hageman's entire confinement in cell 413, the Court finds that these facts do not rise to the level of a substantial risk of serious harm. *See, e.g., Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) (exposure to raw sewage from overflowed toilet for four days was insufficient to state a constitutional violation, whether analyzed under Eighth Amendment or Due Process jurisprudence, noting that "[c]onditions such as a filthy cell that may be tolerable for a few days are intolerably cruel for weeks or months"). Because the allegations do not satisfy the first element of an Eighth Amendment cause of action, Hageman fails to state a claim for deliberate indifference to his health or safety. Accordingly, the Court recommends that his claim regarding the blood in cell 413 be dismissed.

## VI.    Right of Access to the Courts

For an inmate to prevail on a claim that a prison official interfered with his right to access the courts, the inmate must show that the official intentionally restricted court access. *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 830-31 (8th Cir. 2005). He must also show he was actually harmed in pursuing his legal claim by impediments attributable to the official. *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996).

Billups and Hageman allege that on September 18, 2019 they requested federal civil lawsuit packets from MCF-St. Cloud staff, including Engeldinger. Am. Compl. at 11. They allege Brausen refused to notarize their signatures on the complaint and Billups'

signature on his IFP application so that they could file this lawsuit. *Id.* at 17; Supp. at 1. Billups alleges he asked Baird for a civil cover sheet for a federal lawsuit and Baird responded he did not know what item Billups was asking for. Supp. at 2.

These allegations do not support a claim for denial of access to the courts. The events at issue in this lawsuit occurred on various dates in August and September 2019. For example, Hageman was in the segregation cell described in the lawsuit from September 16-18, 2019. Billups was in a segregation cell from August 10 to some unspecified date; when Hageman returned to their shared cell 710 on September 18, 2019, Billups was there. *See* Am. Compl. at 2, 9. Only then, it appears, did they begin preparing this lawsuit. Five days later, on September 23, 2019, their signatures on the Complaint were notarized by Brausen. Dkt. No. 1 at 25, 26. That same day she notarized Billups' signature on his IFP application. Dkt. No. 3 at 3. This lawsuit was received and filed in federal court on September 24, 2019. Dkt. No. 1 at 1. Any delay or hindrance in getting what they needed to file this lawsuit was minimal or non-existent.

Their other access-to-courts allegations are insufficient because they are nothing more than bare, conclusory assertions. Billups alleges Baird, Krippner, and Engeldinger denied him access to legal documents, but does not specify what documents he is talking about or describe in any way how or when his access to the documents was impeded. Supp. at 2. Plaintiffs allege "[d]enial of access to Courts by interfering with access to lawyers, law library, law enforcement, legal documents and notary by Gwen Brausen," "by confiscating legal materials," and by "blocked calls to law enforcement and lawyers." Supp. at 1. But again, other than the allegation that Brausen refused to notarize their documents (which is refuted by their own documents filed with the Court), these are

20

conclusory assertions that fail to identify who did what, and when, or describe in any way how their access to the courts was impeded. Accordingly, their access-to-courts claims should be dismissed.

## VII.   Procedural Due Process

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property, and those who seek to invoke its procedural protection must establish that one of these interests is at stake. *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (citing *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005)). A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, or it may arise from an expectation or interest created by state laws or policies. *Id.* Once a liberty interest is established, the next question is what process is due. *Id.* A court reaches the question of what process is due only if the inmate establishes a constitutionally protected liberty interest. *Id.*

An inmate has no protected liberty interest in remaining in the general prison population; his only liberty interest is in not being subjected to "atypical" conditions of confinement. *Id.* at 1082. To assert a liberty interest, the inmate "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Id. S*egregation, even without cause, is not itself an atypical and significant hardship. *Id.*

Hageman alleges he was "unjustly confined to a segregation cell without Due Process." Supp. at 1. He states he never received a copy of a conduct report, a rule violation, or a violation report, and never received notice of due process hearing rights or a hearing date. Am. Compl. at 14. He alleges he "was transferred to MCF Stillwater and

21

no explanation, Due Process or report was ever given to the Plaintiff regarding the incident." Supp. at 2. Finally, he alleges he "wrote a grievance to Warden Eddie Miles and also The Inspection and Enforcement unit of the MN D.O.C. (Exhibit A1 and A2)" and "[n]o action was taken." *Id.*

The Supplement also contains general allegations, apparently regarding both Hageman and Billups, that there were "[v]iolations of Right to Due Process in connection with unfounded disciplinary violations" and "[v]iolations of Due Process by placement in Administrative Detention or similarly restrictive confinement." *Id.*

None of these allegations plead a plausible claim for a constitutional violation. Although the Supplement refers to "unfounded disciplinary violations," the Amended Complaint has no factual allegations describing any charges against Hageman or Billups for violations of prison rules. It states that the reason Hageman was placed in segregation on September 16, 2019 was "for protection from other offenders," not as discipline. Am. Compl. at 3; *see also* Ex. I to original Complaint (Sept. 16, 2019 Administrative Segregation Order and 24-Hour Review stating "offender requires protection from other offenders"), Dkt. No. 1-1 at 14. The Amended Complaint does not identify the reason Billups was in the segregation unit during the four or five days in September 2019 when he was without his Bible, nor does it allege that Billups is challenging the reason or the process involved in his placement there. Thus, any claim of a due process violation related to any discipline fails because there are no factual allegations to support such a claim.

In addition, to the extent Hageman may be asserting a procedural due process claim regarding his transfer to MCF-Stillwater,[6] he has not stated a cognizable claim. A "prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer." *Murphy v. Missouri Dep't of Corr.,* 769 F.2d 502, 503 (8th Cir. 1985) (per curiam).

To the extent Hageman alleges a constitutional violation because "officials" took "no action . . . at all" in response to his grievance to Warden Miles alleging assault and deprivation of his Bible from September 16-18, 2019, his Amended Complaint and exhibits show that Warden Miles provided a written response, and he was not denied access to the prison's grievance procedures. *See* Ex. A1 (Oct. 7, 2019 letter from Warden Miles to Hageman), Dkt. No. 25-1; Ex. A2 (Oct. 4, 2019 response from Warden Miles to Oct. 1 kite from Hageman), Dkt. No. 25-2. His dissatisfaction with the response does not give rise to a claim under the circumstances here. Prison grievance procedures do not confer any substantive rights on inmates and hence do not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (defendants' failure to process any of inmate's grievances, without more, is not actionable under § 1983).

Finally, while Hageman alleges he "was placed in segregation for an unjustified amount of time," Am. Compl. at 10, the duration of his confinement there was two to three days, from September 16-18, 2019. Moreover, the reason for the placement was his own

---

[6] The transfer is not mentioned in the Amended Complaint, and the Supplement contains only this single phrase. As the Court reads the sentence, it does not state any complaint about the transfer itself but rather says that as of the time he was transferred to MCF-Stillwater he had not received any "explanation, Due Process, or Report . . . regarding the incident."

protection from other offenders. He has offered no facts to support his conclusion that this duration was "unjustified." His conclusory assertion, without more, is insufficient to plead a claim for any constitutional violation.

Because Plaintiffs have not alleged sufficient facts to support a plausible claim that their procedural due process rights were violated, the Court recommends that any such claims be dismissed.

## VIII.    Substantive Due Process

The Amended Complaint asserts a violation of "substantive due process rights," but it does not identify the fundamental right or the specific conduct at issue that relates to this claim. *See* Am. Compl. at 15 (corrections officers' "actions violated the Plaintiff's right to be free from discriminatory official treatment, religious discrimination, and violated Mr. Hageman's substantive due process rights"), 18 ("certain officers . . . are discriminatory and are performing lawless, revolting, frightful and quite frankly shocking behavior"), Dkt. No. 27. It is unclear whether either Hageman or Billups is alleging a substantive due process violation regarding conduct that does not fall within a more specific provision of the Constitution.[7]

The Due Process Clause of the Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law. Supreme Court cases have established that this provision guarantees more than a fair process and covers a substantive sphere as well. *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (discussing cases). In the prison context, the Constitution imposes upon the State

---

[7] If a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *County of Sacramento,* 523 U.S. at 843.

a duty to "provide for [an inmate's] basic human needs — *e.g.,* food, clothing, shelter, medical care, and reasonable safety." *Id.* at 851. But the Supreme Court has "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.* at 848. The Fourteenth Amendment does not supplant traditional tort law and "does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 848-49. Rather, to be actionable under § 1983, the conduct of a state official that infringes a fundamental right must "shock the conscience" in a constitutional sense. *Id.* at 846-47 (citing *Rochin v. California,* 342 U.S. 165, 172-73 (1962)). "[O]nly the most egregious official conduct" satisfies this test. *Id.* at 846.

Plaintiffs have not alleged such conduct here. In order to "preserv[e] the constitutional proportions of substantive due process," there must be "an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id.* at 850. The Court has reviewed the various factual allegations and circumstances alleged in the Amended Complaint and finds that Hageman and Billups fail to meet that demanding standard. Therefore, they have failed to state a plausible claim for a substantive due process violation, and any such cause of action should be dismissed.

## IX.   Conspiracy

To prove a § 1983 conspiracy claim, a plaintiff must show that (1) a defendant conspired with others to deprive him of constitutional rights, (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy, and (3) the overt act injured the plaintiff. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). The plaintiff

must allege facts sufficient to show that the "defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights," *i.e.,* had a "meeting of the minds" or "an understanding among the conspirators to achieve the conspiracy's aim." *Id.* at 816 (internal quotation marks and citations omitted).

Here, Hageman and Billups's allegations of conspiracy are wholly conclusory. Although the stated purpose of their two-page Supplement [Dkt. No. 28] to the Amended Complaint was to "specify the following actions by all named Defendants that give rise to liability," the Supplement does not allege any specific facts regarding individual Defendants or their actions but rather offers only bare conclusions:

> Plaintiffs assert that all individually named Defendants engaged in retaliatory behavior and said behavior was a direct result of a conspiracy among the individually named Defendants . . . .
>
> * * *
>
> Conspiracy to violate Plaintiffs' Rights in furtherance of retaliation;

Dkt. No. 28 at 1.

Likewise, the Amended Complaint itself [Dkt. No. 27] contains only conclusory assertions, not specific factual allegations to support a conspiracy cause of action:

> The Defendants conspired to oppress, persecute, abuse, repress, mistreat, religiously discriminate, coerce, threaten and intimidate the Plaintiffs.
>
> * * *
>
> The Defendant the Minnesota Department of Corrections and correctional officers conspired to oppress, persecute, abuse, repress, and suppress, mistreat, intimidated and coerced the Plaintiffs.
>
> * * *
>
> Summary: The Minnesota Department of Corrections, St. Cloud Correctional Facility Administration and correctional officers combined,

agreed and conspired against the Plaintiffs. These individuals involved themselves in a sinister conspiracy.

* * *

All of the officers violated policy and conspired against Mr. Billups and Mr. Hageman.

* * *

The simultaneous retaliation over Mr. Hageman and Mr. Billups' wishes and constitutional right to their Bibles resulted in many negative damages both past and future to the Plaintiffs. All of the threats, the disrespect and disregard for Mr. Hageman's safety, the coercion, intimidation, and disrespect by the Minnesota Department of Corrections, correctional officers acted as a group to plan in secret from other officers and the Plaintiffs an unspeakable crime.

Dkt. No. 27 at 10, 13, 14, 16, 17.

Plaintiffs' generalized assertions fall far short of pleading a plausible claim of conspiracy under § 1983. Plaintiffs have not alleged any facts to show there was an agreement or "meeting of the minds" among any particular Defendants, much less all of them, to engage in specific conduct that violated any constitutional rights of either Hageman or Billups. Therefore, the Court recommends that all conspiracy claims against the Defendants be dismissed.

## X.   Additional Incident on October 1, 2019

In the Supplement, Hageman for the first time makes allegations that, in addition to the September 16, 2019 incident described in the Amended Complaint, he was also "attacked by correctional officers . . . inside of health services when he asked to read a document before he agreed to sign it." The officers "dragged [him] to the segregation unit and proceeded to rip and cut Hageman's clothes off of him and threw him naked into a freezing 'quiet cell' without ever getting a Due Process hearing." Supp. at 2, Dkt. No. 28. Neither the original Complaint [Dkt. No. 1] nor the Amended Complaint [Dkt. No. 27]

mentions any quiet cell incident relating to Health Services and his refusal to sign a document there. The Supplement does not identify the date of the incident, but an exhibit indicates it occurred on October 1, 2019, about a week after this lawsuit was filed. *See* Ex. B17 (Segregation Unit Intake form dated Oct. 1, 2019), Dkt. No. 26 at 11.[8] Hageman "asserts this was a cruel and unusual punishment and denial of Due Process and a violation of his Fourth Amendment because ripping his clothes was part of a search conducted unreasonably."[9] Supp. at 2.

These factual allegations, first raised in the Supplement that was filed on June 19, 2020, go beyond the subject matter of Hageman's claims as described in the original and Amended Complaints, *i.e.*, his September 16, 2019 move to the segregation unit, broken wrist, and lack of access to his Bible until he was released back to the general population on September 18, 2019. The purpose of allowing Plaintiffs to amend their complaint was to "cure the pleading deficiencies identified by the R&R," with specific directions that "they

---

[8] In their brief, Defendants include Hageman's quiet cell allegations as part of the September 16, 2019 incident. *See* Dkt. No. 53 at 4, 16. This is understandable because the Amended Complaint and Supplement fail to clearly delineate certain events and allegations. But the record shows the quiet cell incident, which includes cutting of his clothing, is a separate incident. Exhibit B17 is a Segregation Unit Intake form dated October 1, 2019 that notes the "quiet cell" and says Hageman's "t-shirt [was] cut off." Dkt. No. 26 at 11. In contrast, the Segregation Unit Intake form dated September 16, 2019 contains an inventory of Hageman's clothing but has no notation that any clothing was cut off and no reference to a quiet cell. *See* Ex. A to the original Complaint, Dkt. No. 1-1 at 2.

[9] The Court notes that Hageman has not asserted any Fourth Amendment claim regarding the search conducted when he was placed in the segregation cell on September 16, 2019. The Amended Complaint does not allege that this search was unreasonable or contain any claim of a Fourth Amendment violation. *See* Dkt. No. 27. Hageman's only claim that a search was unreasonable pertains to the October 1, 2019 incident mentioned in the Supplement: "officers dragged the Plaintiff to the segregation unit and proceeded to rip and cut Hageman's clothes off of him and threw him naked into a freezing 'quiet cell' . . . . Plaintiff asserts this was . . . a violation of his Fourth Amendment because ripping his clothes was part of a search conducted unreasonably." Supp. at 2, Dkt. No. 28.

should specify the actions by each defendant that give rise to liability, " [Order at 4, Dkt. No. 22] — not to introduce new claims based on a new and unrelated event into the lawsuit. Moreover, it is not clear who was involved in both the September 16 and October 1 incidents. Rule 20 of the Federal Rules of Civil Procedure states that defendants may only be joined in a single lawsuit if the claims relate to the same transaction, occurrence, or series of transactions or occurrences, or present a common question of law or fact. Fed. R. Civ. P. 20(a)(1). Any claims relating to the October 1, 2019 quiet cell incident do not belong in this case.

More fundamentally, though, these allegations are insufficient to set forth a claim under § 1983. First, Hageman does not identify any individuals who were personally involved in any part of the incident, who may or may not be among the 16 named defendants in this lawsuit. He also provides no details about why he was placed in the quiet cell, how long he was there, or the conditions in the cell throughout his confinement there. There is insufficient information to plead a plausible claim that any Defendant here personally engaged in conduct that violated his due process, Fourth Amendment, or Eighth Amendment rights. Accordingly, the Court recommends that his claims relating to the October 1, 2019 quiet cell incident be dismissed.

## XI.    Qualified Immunity

Given the Court's recommendation that the claims against Defendants be dismissed for the various reasons set forth above, the Court need not reach the issue of qualified immunity.[10]

---

[10] The Court notes that Defendants asserted generally that qualified immunity applies here, but did not present facts or analysis specific to any claim. *See* Def. Mem. at 18-19, Dkt. No. 53; Reply at 7, Dkt. No. 62.

## XII.   Possible State Law Claims

Interspersed in the Amended Complaint and Supplement are references to assault, common law battery, medical malpractice, and violation of the Minnesota Constitution. Because Plaintiffs' pleading is not organized by counts or causes of action, there are no specific counts that explicitly invoke state law as the basis for liability. To the extent Plaintiffs assert that any of their rights were violated under state law, given the Court's recommendation that their federal constitutional claims under § 1983 be dismissed, the Court also recommends that the Court decline to exercise supplemental jurisdiction over any state law claims.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, THE COURT RECOMMENDS THAT Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983 [Dkt. No. 52] be **GRANTED**.

Dated: January 21, 2022                   __s/David T. Schultz_____
                                          DAVID T. SCHULTZ
                                          U.S. Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local

Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).