# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Khalil Billups and
Adam R. Hageman,

      Plaintiffs,

  vs.

Minnesota Department of
Corrections, Lt. J. Rykken, Lt.
Engeldinger, Lt. Baird, Sgt. G.
Brausen, Officer Fleck, Officer B.
Hudek, Officer Matthew Kotaska,
Officer Tyler Haugen, Officer
Christopher Fadling, Officer
Zachariah Frank, Officer J.
Elmore, Officer J. Lehner, Officer
Anderson, Officer Zencius,
Officer S. Mielke, Warden Miles,
and AWO Carol Krippner,

      Defendants. [1]

Civil File No. 19-cv-2581 (NEB/DTS)

# WRITTEN OBJECTION TO

## REPORT AND RECOMMENDATION

RECEIVED
BY MAIL

FEB 03 2022

CLERK, U.S. DISTRICT COURT.
ST. PAUL. MN

Plaintiffs Khalil Billups and Adam Hageman filed this Section 1983 action alleging
that the Minnesota Department of Corrections (DOC) and DOC defendants Jay Rykken,
Todd Engeldinger, Brant Baird, Gwen Brausen, Ross Fleck, Ben Hudek, Matthew Kotaska,
Tyler Haugen, Christopher Fadling, Zachariah Frank, Jason Elmore, Joseph Lehner, Sean
Anderson, Grace Zencius, Shawnee Mielke, Eddie Miles, and Carol Krippner in their
official and individual capacities, violated their constitutional rights. (Doc. Nos. 27-28.)

---

[1] Lt. Rykken's first name is Jay, Lt. Engeldinger's first name is Todd, Lt. Baird's first name
is Brant, Sgt. Brausen's first name is Gwen, Officer Fleck's first name is Ross, Officer
Hudek's first name is Ben, Officer Elmore's first name is Jason, Officer Lehner's first
name is Joseph, Officer Anderson's first name is Sean, Officer Zencius's first name is
Grace, Officer Mielke's first name is Shawnee, and Warden Miles's first name is Eddie.



SCANNED
U.S. DISTRICT COURT ST. PAUL

## I.    BACKGROUND

Plaintiffs filed the Complaint on September 24, 2019. *See* Compl. 1.[1]  At that time, Plaintiffs were both inmates at the Minnesota Correctional Facility in St. Cloud, Minnesota (MCF–St. Cloud). *See id.* at 2. Defendants are the Minnesota Department of Corrections (MNDOC)—the Minnesota state agency responsible for MCF–St. Cloud—and fifteen individual defendants who apparently worked for the MNDOC at MCF–St. Cloud. *See id.* at 1.

Plaintiffs purport to bring this action under 42 U.S.C. § 1983. *See id.*   The Complaint's allegations discuss several incidents that (Plaintiffs claim) involved violations of their rights under the U.S. Constitution; Plaintiffs also claim that Defendants violated various federal criminal statutes. *See id.* at 2–20. On the Court's read, the Complaint focuses on five main courses of conduct.

- First, on September 16, 2019, various unnamed correctional officers removed Hageman from his bunk while he was studying his Bible. *See id.* at 4.    These officers were moving Hageman to MCF–St. Cloud's segregation unit. *See id.* at 5. Plaintiffs allege that while transferring Hageman, the officers "assaulted him by lifting [him] by the handcuffs chain." *Id.* Plaintiffs claim that the assault was "an act of retaliation and religious discrimination." *Id.*

- Second, Plaintiffs allege that when Hageman arrived at his segregation-unit cell, there was "an unknown offender's blood all over the wall, floor, and in sink." *Id.* at 5.  Furthermore, several times during the transfer process, Hageman specifically asked the officers to let him keep (among other things) his copy of the Bible, an edition he describes as a "Holy Good News Bible with Deuterocanonicals/Aprocrypha." *Id.* at 5. After the transfer, however, MCF–St. Cloud staff brought him the wrong Bible—specifically, Billups's, which Plaintiffs describe as a "New International Reader's Version NIRV Free on the Inside Large Print Bible." *Id.* at 8.  The result was that

---

[1] Because the filed Complaint is not paginated consecutively, the Court cites to it using the page numbers provided by the Court's CM/ECF filing system.

Hageman, while in the segregation unit, had the wrong Bible, and Billups was without his Bible as well.

- **Third**, Plaintiffs generally suggest that MCF–St. Cloud staff improperly followed up with Hageman after he indicated that he was suffering "extreme and tormenting pain" a few days after the September 16 incident. *Id.* at 15. Plaintiffs allege that after Hageman asked for medical assistance, he was told that a doctor would follow up with him, but then no doctor did. *See id.* Plaintiffs also contend that Hageman repeatedly asked for someone to take pictures of his injuries, but no one did. *See id.*

- **Fourth**, Plaintiffs allege that Hageman was "never served a copy of a conduct report, rule violation, or violation report," and was "never served a notice of his due process hearing rights and/or notice of a hearing date." *Id.* at 17. The issue here appears to be that Hageman believes that he should have received some formal explanation for why he was moved to the segregation unit. *Id.*[2]

- **Fifth**, Plaintiffs allege that in the process of trying to prepare this lawsuit, MCF–St. Cloud staff refused to notarize certain documents. *See id.* at 20.

The Complaint mentions various potential causes of action. In several summary paragraphs, Plaintiffs assert that Defendants "combined, agreed, and conspired against the Plaintiffs"; violated Plaintiffs' "right to be free from discriminatory official treatment"; and violated Plaintiffs' rights under the First Amendment. *Id.* at 18. They also claim that Defendants' conduct violated Hageman's "substantive due process rights." *Id.* Plaintiffs also state that Defendants violated numerous federal criminal statutes. *See id.* at 18–20.

Plaintiffs' only explicit request for relief is a demand for $14.8 million in damages. *See id.* at 23. They ascribe this to "lost/reduced future earning capacity, . . . future health care expenses, future pain, future disability, past emotional distress, and any and all future or past damages." *Id.*

---

[2] After a couple days in the segregation unit, Hageman was transferred back to his original cell. *See* Compl. 17.

## II. ARGUMENT

A. The Court addressed this action and subjected the lawsuit to a screening process contemplated by § 1915 (e)(2)(B). U.S. Magistrate Judge David T. Shultz allowed the case to proceed and did not dismiss the action under Federal Rule of Civil Procedure 12 (h), for failure to state a

claim on which relief may be granted."

(c) Plaintiffs specifically object to Judge Schultzs proposed finding and Recommendations that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for Violation of Civil Rights Under 42 U.S.C. §1983 be granted [Dkt. No. 65] Under Local Rule 72.2 (b)(1).

The Court must review de novo the Report and Recommendation based upon Specific objection to the Magistrate Judges recommendation that Plaintiffs Free Exercise of Religion and Retaliation Claims be dismissed. 28 U.S.C. § 636 (b)(1); accord D. Minn. L. R. 72.2 (b).

Here, Hageman argues that he was engaged

in "First Amendment protected activity" on September 16th, 2019 when he was reading his Bible.

Judge Schultzs finding that Plaintiffs allegations do not state a claim that their First Amendment Rights were violated is indeed inconceivable and also

7.

incorrect for the following reasons: Hageman has in fact plead sufficient facts that The Court has accepted as true, (Doc. No. 65, Page 2/ Procedural Background, Dkt. No 1, 27 and Plaintiffs Supplement No. 28), which together form the operative pleading in this lawsuit and provided

8.

numerous exhibits to The Court (Dkt. Nos. 1-1, 1-7, 20, 25-26, 38 and 38-1) to support the Plaintiffs Claims.

The Plaintiffs Complaint Contains Specific facts Sufficient to Support its legal Conclusions. Hageman has Stated Several Plausible Claims.

" On the Courts read,
the Complaint focuses
on five main courses
of" [mis]"conduct."
(Doc. Nos. 13 and 45)

The Free Exercise
Clause of the First
Amendment was violated
by Todd Engeldinger,
Ross Fleck, Matthew
Kotaska, Tyler Haugen,
10.

and Shawnee Mielke
When they forcefully
and unconstitutially
separated Hageman
from his Bible with
excessive force.

Clearly Hageman has
described the incident,
the operative pleading
in this case - that
officials [Defendants]
took adverse action

against him while he was engaged in a First Amendment protected activity that prevented/"chilled" Hageman from continuing in the activity of Bible Study for Monday September Sixteenth 2019. (See Doc. 45, Page 28 and 29 at 14, 15, 15 (a), (b), and 15 (c)). The Court cannot conclude

12.

that the adverse action was or was not motivated at least in part by the exercise of the protected activity without observation of witnesses/Defendants demeanor in order to evaluate their credibility. Hageman contends that it was motivated by the exercise of his Constitutional Right to Religious Freedom

13.

and First Amendment Right
to The Freedom of Speech.
(Doc. 27 and 45 at 15, 16, p. 28
Page 29) The facts from
which to infer a retaliatory
motive on the Defendants
part are outlined in both
the Amended Complaint and
Plaintiffs Supplement.

Hageman also specifically
Objects to Judge Shultzs

14.

finding that Hageman has not adequately and plausibly pleaded factual allegations to support his excessive force and failure to protect claims. Magistrate Judge Schultz is incorrect in his analysis. The Law and Minnesota Department of Corrections policy is Clear. MNDOC officers are deemed

15.

to Know the Law and are required to Know and be trained to abide by MNDOC policy including Duty to intervene.

Todd Engeldinger, Ross Fleck, Matthew Kotaska, Tyler Haugen, and Shawnee Mielke broke Federal Law and violated Hagemans Constitutional Right that is guarantied by the Eighth Amendment's ban on Cruel and unusual

16.

punishment which applies to excessive force claims brought by Convicted Criminals Serving their Sentences. <u>Wilson v. Spain</u>, 209 F.3d 713, 715 (8th Cir. 2000).

Mr. Hageman was not resisting Engeldinger, Fleck, Kotaska, Haugen, or Mielkes adverse

17.

actions. The fact is quite to the contrary, Hageman was quietly reading his Bible, when the prison officials used excessive physical force in violation of the Cruel and Unusual Punishment Clause (Doc. No. 27 at Page 4, paragraph 14, 15, 15 (a) (b) (c); Doc. No 28, Page 1) when the Defendants

18.

forcibly removed him from his upper bunk and Bible using unreasonable and excessive force. The excessive force was not "applied in a good-faith effort to maintain or restore discipline" Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). There was no need for the

19.

application of force that was used. Hageman asserts that his injuries were deliberately and maliciously inflicted to cause harm when Engeldinger, Fleck, Kotaska, Haugen, and Mielke lifted him up by the handcuff chain and broke his wrist from which "inferences may be drawn as to whether

20.

the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Jackson v. Gutzmer, 866 F.3d 969, 974 (8th Cir. 2017) (quoting Whitley, 475 U.S. at 321. (1986))

21.

The Magistrate Judge is wrong because Hageman has established an excessive force claim.

On top of that, if we understand this matter from the perspective of rank, Hagemans failure to protect claim is very obvious with respect to Lieutenant Brant 22.

Baird, Lt. Jay Rykken,
Lt. Engeldinger and Sergeant
Jason Elmore. Because
Baird and Rykken were in
charge of disipline of
subordinate officers and
Elmore in charge of the
Segregation unit and Lt.
Engeldinger in charge of
the E-unit that Hageman
was assaulted in to
begin with 23 — They all had

a duty to intervene when the other officers were using unreasonable excessive force on Mr. Hageman. The Law according to Farmer v. Brennan 511 U.S. 825, 832-33 (1994) requires prison officials take reasonable measures to guarantee inmates' health and safety.

24.

Most certainly the Defendants are officers and officials of the MNDOC that have been exposed to training and information concerning the risk of serious harm to an inmate being handcuffed and lifted by the chain. Officers are also required to know all MNDOC policy. Policy and training requires

25.

officers to intervene when another officer is using unreasonable excessive force. The risk was obvious enough to support an inference that they knew the risk existed yet they failed to protect Hageman. (Doc. No. 28, page 2)

The first paragraph is clear about "who failed to act" It was Elmore, Baird, 26.

Engledinger and Rykken.
Hageman advised at least
five of the officers that
they were violating his
Constitutional and Civil
Rights (Pl's Comp. at 15,
19, 24, pages 5, 6, and 8)
Defendants were aware of the
Unconstitutional Conduct and failed
to act — With a Conscious
disregard for Hagemans Safety.
27.

Hageman contends the case has merit because it states viable claims, alleges sufficient facts to withstand a Fed. R. Civ. P. 12 (b) (6) motion to dismiss. Document No. 57 outlines Plaintiffs Argument and position on Plaintiffs' Causes of Action. Plaintiffs Claims

28.

are facially plausible because the factual content properly permits The Court to draw a reasonable inference that the Defendants are liable for misconduct. The above reasons are basis for th[e] Court to reach a different outcome.

In addition, Hageman Objects to Judge Schultzs 29.

finding that Hageman has failed
to state a claim for any
Constitutional Violation
arising out of his medical
care because Mr. Hageman
has provided the Court
evidence that although
X-rays were ordered, the
X-ray tech Tony refused to
X-ray Hagemans broken wrist
See Doc. No. 20 page 15,
30.

16, 18, 20, and Page 10)
Hageman _never_ recieved an
X-ray while at MCF-
St. Cloud. On September
23, 2019 he wrote to
Nurse Kay Fjoslien and
told her he "needed a
Cast" because he "heard
the bones making noise
over the last several days
after I heard my wrist snap

31

on 9/16/19" Doc. 20

page 10. Fjoslien did not respond until October 1, 2019. Hageman finally recieved an X-ray on October 7th, 2019, 22 days after his wrist was severely fractured by the officers. (See Doc. No. 25-3, page 1) The first and only X-ray was given at MCF-Stillwater on 10/7.

32

Magistrate Judge Schultzs determination is incorrect when he writes " Hageman's factual allegations in his pleading, along with the attached exhibits, do not support a reasonable inference that any official was deliberately indifferent to his serious medical needs."

Mr. Hageman needed

33.

a medical doctor for his Serious medical needs. Judge Schultz is Wrong again When he Concludes "He [Hageman] was examined by a Physician". (Doc. No. 65 at 17) It was a mistake Hageman made assuming that Nurse Ramler was a doctor, she was not. Hageman did not See a doctor for 25 days. (Exhibit A4, Doc. No 25-4)

The first Dr. that examined his wrist was on October 10th 2019 at MCF-Stillwater.

34.

Hageman was only ever seen
by nurse Ramler and nurse
Fussy (Exhibit M Doc. 19,
page 14) and given ibuprofen
200mg on 9/20/19 then
tylenol by Susie Dahl on
9/24/19, (Doc no. 20 page 21)
then another nurse Kay Fjoslien.
All the nurses lied to Hageman
about getting an X-ray scheduled.
Doc. No 20, Page 20

35.

No X-ray for 22 days, (Doc. 26 p 13)
No Doctor for 25 days, is
egregious and Grossly
incompetent, no Cast and
only ibuprofen and tylenol for
a Severely fractured wrist is
inadequate at best, the "splint"
(exhibit placeholder-1) Was a flimsy
Doc. 33
Velcrow Strap - also inadequate.
Hagemans Medical Care and
Malpractice Claim is the
Proscription of Cruel and

36.

unusual punishment.

Hageman has alleged and stated a claim of "Grossly incompetent and inadequate care that Constitutes deliberate indifference in Violation of the Eighth Amendment where the treatment was so inappropriate as to evidence intentional maltreatment or a refusal to provide essential

37.

Care." Dulany v. Carnahan, 132 F.3d 1234, 1237 U.S. (8th Cir. 1997) at 1240-41. A medical Dr. never set Hagemans broken wrist and that refusal to provide essential care resulted in "Misalignment of fracture, neurological changes, chronic pain, and circulation changes." (See Doc. No. 26, page 14) which caused Hageman

38.

Nurse Ramler is not a doctor,
that is who examined Hagemans
fractured/broken bones and ordered
X-rays. Doc. No. 27. No x-rays
were taken at MCF-St. Cloud.
Mr. Hageman continued to suffer
extreme and tormenting pain
at 41 page 15 and Facts 2
Pl's Comp. 27. Medical
malpractice was clearly an
issue when Plaintiff Hageman
was denied care from September
39.

16, 2019 to October 7, 2019.
(Supp. Doc. 28, page 2)
Hageman has stated a claim
which relief can be granted.
The Magistrate Judge erred
by failing to consider all the
facts that support the claim
contained in numerous
exhibits and Supplement
Documents. Judge Schultz's
findings and Recomendation in
respect to the above claims are
40.

erroneous in light of the new argument raised by Hageman's objection and gives The Court basis to reach a different outcome.

Finally, Hageman specifically objects to Judge Schultz's recommendations that Plaintiffs Procedural and Substantive Due Process Claims be dismissed.

There are several reasons why the Magistrate Judge's determination is incorrect.

First Hageman was subjected to "atypical" conditions of confinement in Segregation Cell 413 where there was another person's blood on the wall, floor, sink, and toilet. It is well understood that proximity to someone else's

42.

blood risks exposure to disease, and courts recognize that it carries risk. Hageman contends that since he had open cuts to his thumb, finger, and wrist (Doc. No. 27, page 7 at 22 (a) and (b) his unjustified incarceration in cell 413 posed a substantial risk of serious harm to his health and safety and his Liberty Interest is in not being subjected

43.

to "atypical" Conditions of Confinement. <u>Smith V. McKinney</u>, 954 F.3d 1075, 1079 (8th Cir. 2020) at 1082.

Second, because the Confinement was three days from September 16-18, 2019 it exceeded the 24 hour Rule Requirement (See Ex 1 to original Complaint

44.

(September 16, 2019 Administrative Segregation Order) and the "Lt. Officer [Rykken] informed [Hageman] there would be no Violation report and that he would be released back into general population (Doc. 27 page 8 at 24). Mr. Hageman was not released from cell 413 on 9/16/19 to Plaintiffs Surprise (Am Compl. at 29)

45.

The Magistrate Judge is wrong when he finds that "He [Hageman] has offered no facts to support his conclusion that this duration was "unjustified.""

The facts are Hageman was unjustly confined on September 17th and 18th, 2019. (Supp. at 1) Without Due Process in atypical

46.

Conditions of Confinement.
Recieving no paperwork what-
so-ever regarding formal
Due Process is a manifest
of injustice and not the
Process due. Am. Comp. at
14. in Violation of The
Fourteenth Amendment's
Due Process Clause.

Hageman was not released
from cell 413 until 9/18/19.
(Doc. No. 27, Page 10 at 30)
47.

The facts State a Claim
as a matter of Law.
The Fundamental Right to
Due Process was violated
When Hageman was placed
back in Segregation Cell 413
after he was informed there
Would be no Violation and he
Could return to general
Population. Hageman was placed
in punitive isolation for

48

an unjustified amount of time for an unfounded disciplinary violation, Finney v. Mabry, 528 F. Supp. 567, 574 (Ed. Ark. 1981) with no written notice. The Defendants "failed to adequately protect Hageman through its procedures" Schmidt v. Des Moines Pub. Schs., 655 F.3d 811, 817-18 (8th Cir 2011) and because

of the atypical and significant risk of harm / hardship "in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484-85 (1985). The placement in cell 413 <u>was not</u> "for the "protection" from other offenders," on September 17th and 18th, 2019. The abuse of power "was extreme and outrageous, intentional and reckless" (Doc 45 page 40.) Hageman was shocked / surprised at his placement back in segregation Doc 45, at 29.

# CONCLUSION

For the above reasons, the Plaintiffs respectfully request that The Court deny the Defendants' Motion to Dismiss and allow Plaintiffs to proceed within jurisdiction for violation of Civil Rights under 42 U.S.C. §1983.

Dated: January 28, 2022

Respectfully Submitted,

Adam Hageman
7525 4th Ave
Lino Lakes, MN 55014